IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Jennifer Scarborough<br>          Debtor, | BANKRUPTCY CASE NUMBER<br>20-14465-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>          Movant.<br>v. | CHAPTER 13 |
| | 11 U.S.C. § 362 |
| Jennifer Scarborough<br>          Debtor/Respondent, | Hearing Date and Time: <u>April 26, 2022 at 11:00 AM</u> |
| Jason L Scarborough<br>          (Non-filing Co-Debtor), | Courtroom # 4 Philadelphia Division/Nix<br>Building |
| Kenneth E. West, Trustee<br>          Additional Respondent. | |

**<u>MOTION OF NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER FOR RELIEF
FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY UNDER SECTION §362 (d)
AND §1301</u>**

Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant"), by and
through its undersigned counsel, pursuant to 11 U.S.C. §362 and §1301, hereby seeks relief from
the automatic stay and co-debtor stay to exercise and enforce its rights, without limitation, with
respect to certain real property.  In support of this motion, Movant avers as follows:

1.      Debtor named above filed a Voluntary Petition under Chapter 13 of the United
States Bankruptcy Code in the Eastern District of Pennsylvania under the above case
number.

2.      Movant is the holder of a secured claim against Debtor and Jason L Scarborough
("Non-filing Co-Debtor"), secured only by a first mortgage lien on real estate which is
the principle residence of Debtor located at 3039 Hellerman Street, Philadelphia, PA
19149 (the "Mortgaged Premises").

3.      Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the property
referenced in this motion for relief.  In the event the automatic stay in this case is
modified, this case dismisses and/or the debtor obtains a discharge and a foreclosure
action is commenced on the mortgaged property, the foreclosure will be conducted in the
name of Nationstar Mortgage LLC d/b/a Mr. Cooper.

4.      Nationstar Mortgage LLC d/b/a Mr. Cooper, directly or through an agent, has
possession of the promissory note.  The promissory note is either made payable to

Noteholder or has been duly indorsed in blank.  Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

5.      The filing of the aforesaid Petition operated as an automatic stay under Section 362(a) of the Bankruptcy Code of proceedings by Movant to foreclose on the Mortgaged Premises.  Movant requests relief from the automatic stay to continue with the filed mortgage foreclosure action, if any, and to take the necessary action to obtain the Mortgaged Premises.

6.      Additional Respondent is the Standing Trustee appointed in this Chapter 13 proceeding.

7.      Debtor has claimed an exemption in the amount of $37,508.20 in the subject property.

8.      Debtor has failed to make all post-petition monthly mortgage payments.

9.      The defaults include the failure to make the following monthly payments:

| | |
|---|---:|
| Payments of $943.81 from February 1, 2022 through March 1, 2022 | $1,887.62 |
| Suspense Balance | $(42.59) |
| The total amount due | $1,845.03 |

10.      The Fair Market Value of the Mortgaged Premises is $163,564.20, as per Debtor Schedules.  The approximate amount necessary to payoff the loan is $133,990.14 good through March 21, 2022.  The breakdown of the payoff is as follows:

| | |
|---|---:|
| Principal Balance | $120,327.33 |
| Accrued Interest | $8,021.80 |
| Escrow Advances made by Plaintiff | $1,986.52 |
| Corporate Advance | $4,887.16 |
| Suspense Balance | ($1,232.67 |

11.      Movant's interests are being immediately and irreparably harmed.  Movant is entitled to relief, from the automatic stay, pursuant to either 11 U.S.C. § 362 (d)(1) or (d)(2), because of the foregoing default and because:

a)      Movant lacks adequate protection for its interests in the Mortgaged Premises;

b)      Debtor has little, if any, equity in the Mortgaged Premises; and

c)      The Mortgaged Premises are not necessary to an effective reorganization or plan.

12.    Movant additionally seeks relief from the Co-Debtor stay under §1301 (if applicable) in the instant case, as the continuation of the co-debtor stay causes irreparable harm to the Movant. Movant may be barred from moving forward with its state court rights under the terms of the mortgage without relief from the co-debtor stay.

13.    Movant requests that the Court waive Rule 4001(a)(3), permitting Movant to immediately implement and enforce the Court's order.

14.    Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.


WHEREFORE, Movant respectfully moves this Court for an Order (i) granting Movant relief from the automatic stay to foreclose upon and to otherwise exercise and enforce its rights with respect to the Mortgaged Premises, (ii) awarding reasonable attorneys' fees incurred in the preparation and presentation of this motion, and (iii) granting all such other and further relief as the Court deems appropriate and necessary.


Respectfully submitted,


Dated:   03/30/2022

BY:  /s/ Lily C. Calkins
Christopher A. DeNardo 78447
Kristen D. Little 79992
Lily C. Calkins 327356
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Jennifer Scarborough<br>   Debtor, | BANKRUPTCY CASE NUMBER<br>20-14465-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>   Movant.<br>v. | CHAPTER 13<br><br>11 U.S.C. § 362 |
| Jennifer Scarborough<br>   Debtor/Respondent, | Hearing Date and Time: <u>April 26, 2022 at 11:00 AM</u> |
| Jason L Scarborough<br>   (Non-filing Co-Debtor), | Courtroom # 4 Philadelphia Division/Nix<br>Building |
| Kenneth E. West, Trustee<br>   Additional Respondent. | |

# O R D E R

AND NOW, this _____ day of _____, 2022, at the Eastern District of Pennsylvania, upon the consideration of the Motion of Movant for Relief from the Automatic Stay (the "Motion"), and the failure of Debtor to file an answer, appear or otherwise respond to the Motion, and for good cause shown, it is

ORDERED AND DECREED that the Automatic Stay of all proceedings, as provided under Section 362 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Code"), 11 U.S.C. § 362, is lifted to allow Movant, or its successors, if any, to proceed with its rights under its loan documents for the property located at 3039 Hellerman Street, Philadelphia, PA 19149; and it is

FURTHER ORDERED that Rule 4001(a)(3) is not applicable and Movant, or its successors, if any, may immediately implement this order.


BY THE COURT:


_____
HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Jennifer Scarborough<br>    Debtor, | BANKRUPTCY CASE NUMBER<br>20-14465-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>    Movant.<br>v. | CHAPTER 13 |
| | 11 U.S.C. § 362 |
| Jennifer Scarborough<br>    Debtor/Respondent, | Hearing Date and Time: _April 26, 2022 at 11:00 AM_ |
| Jason L Scarborough<br>    (Non-filing Co-Debtor), | Courtroom # 4 Philadelphia Division/Nix<br>Building |
| Kenneth E. West, Trustee<br>    Additional Respondent. | |

## CERTIFICATE OF SERVICE

I, ___Lily C. Calkins___, an employee of the law firm of LOGS Legal Group LLP hereby certify that I caused to be served true and correct copies of the Motion and Notice of Motion, Response Deadline and Hearing Date by First Class Mail, postage prepaid, at the respective last known address of each person set forth below on this ___30th___ day of _____ ___March___, 2022:

Jennifer Scarborough
3039 Hellerman Street
Philadelphia, PA 19149

Jason L Scarborough
3039 Hellerman Street
Philadelphia, PA 19149

Brad J. Sadek, Sadek and Cooper
1315 Walnut Street
Suite 502
Philadelphia, PA 19107
brad@sadeklaw.com - VIA ECF

Kenneth E. West, Trustee
1234 Market Street, Suite 1813
Philadelphia, PA 19107
ecfemails@ph13trustee.com - VIA ECF

United States Trustee
Sent via electronic notification ustpregion03.ph.ecf@usdoj.gov


      I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

/s/ Lily C. Calkins
_____

Christopher A. DeNardo 78447
Kristen D. Little 79992
Lily C. Calkins 327356
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

Copy

Multistate                              **NOTE**          Loan No. ▆▆▆▆▆▆
                              MIN ▆▆▆▆▆▆▆
                              MERS TELEPHONE:  (888) 679-6377 ▆▆▆▆▆▆▆▆▆▆▆▆

September 2, 2008
[Date]

3039  HELLERMAN STREET, PHILADELPHIA, PENNSYLVANIA  19149
[Property Address]

1.   **PARTIES**
      "Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means
FRANKLIN FIRST FINANCIAL, LTD., a NEW YORK CORPORATION
and its successors and assigns

2.   **BORROWER'S PROMISE TO PAY; INTEREST**
      In return for a loan received from Lender, Borrower promises to pay the principal sum of
**One Hundred Fifty Eight Thousand Two Hundred And 00/100**
Dollars (U.S. $  158,200.00), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of
disbursement of the loan proceeds by Lender, at the rate of Six and Seven-Eighths percent (6.875%) per year until the full amount of
principal has been paid.

3.   **PROMISE TO PAY SECURED**
      Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

4.   **MANNER OF PAYMENT**
      **(A)     Time**
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1,
2008.  Any principal and interest remaining on the first day of October, 2038 will be due on that date, which is called the "Maturity
Date."
      **(B)     Place**
      Payment shall be made at 445 BROADHOLLOW ROAD,
MELVILLE, NEW YORK  11747 or at such place as Lender may designate in writing by notice to Borrower.
      **(C)     Amount**
      Each monthly payment of principal and interest will be in the amount of U.S. $  1,039.26.  This amount will be part of a
larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order
described in the Security Instrument.
      **(D)     Allonge to this Note for payment adjustments**
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note   [Check applicable box]

      [ ]  Graduated Payment Allonge       [  ]   Growing Equity Allonge       [ ] Other [specify]

5.   **BORROWER'S RIGHT TO PREPAY**
      Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day
of any month   Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to
those changes

6.   **BORROWER'S FAILURE TO PAY**
      **(A)     Late Charge for Overdue Payments**
      If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of
this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four  percent
(4.00%) of the overdue amount of each payment.
      **(B)     Default**
      If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the
Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued
interest  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many
circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of
payment defaults   This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note,
"Secretary" means the Secretary of Housing and Urban Development or his or her designee.
      **(C)     Payment of Costs and Expenses**
      If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and
expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.
Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

FHA Multistate Fixed Rate Note - 10/95          Page 1 of 2                    Initials:  _JS_

usfnote

1

Copy

7. **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note

| _(signature)_ | (Seal) | | (Seal) |
| JASON L SCARBOROUGH | -Borrower | | -Borrower |

Social Security No.: ▉▉▉▉

| | (Seal) | | (Seal) |
| | -Borrower | | -Borrower |

FHA Multistate Fixed Rate Note - 10/95                    Page 2 of 2

Copy



# Franklin First Financial, Ltd.
## 329 Hempstead Turnpike
## West Hempstead, NY  11552

## <u>Allonge To Note :</u>

**Borrower (s) Name:**
JASON   L SCARBOROUGH

**Property Address:**
3039 HELLERMAN STREET
PHILADELPHIA, PA  19149

**Loan Amount:**       $  158,200.00

**Loan I.D. Number:**  ██████

**Note Date:**         09/02/2008

**Pay to the order of**   COUNTRYWIDE BANK, F.S.B.
**without recourse.**

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

**Franklin First Financial, LTD**

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

_Mark H. Feldman, CFO_

**Mark H. Feldman, CFO**

**Copy**

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_

MICHELE SJOLANDER
SENIOR VICE PRESIDENT

Copy



**Bank of America** 🏛

## Home Loans

BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date: June 14, 2010

JASON L SCARBOROUGH
3039 HELLERMAN STREET
PHILADELPHIA, PA 19149

Account No: ███
FHA Case No.: ███

Property Address:
3039 HELLERMAN STREET
PHILADELPHIA, PA 19149

## AMENDED AND RESTATED NOTE
### State of Pennsylvania

Origination Date: 2nd day of September, 2008

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred sixty
one thousand thirty and 30/100 (Dollars U.S.) $161,030.30 plus interest, to the order of Lender. Interest will
be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of
five and 13/100, (5.125%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender
from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
    **(A) Time**
    Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
    on April 1, 2010. Any principal and interest remaining on the March 1, 2040 will be due on that date, which is
    called the "Maturity Date."

    **(B) Place**
    Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as
    Lender may designate in writing by notice to Borrower.

    **(C) Amount**
    Each monthly payment of principal and interest will be in the amount of U.S. 876.79. This amount will be part
    of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and
    other items in the order described in the Security Instrument.

    **(D) Allonge to this Note for payment adjustments**
    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the
    covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this
    Note as if the allonge were a part of this Note. [Check applicable box]

    ☐  Graduated Payment Allonge        ☐  Growing Equity Allonge        ☐  Other [specify]

Copy



### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment. of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

### 10. GROUNDS FOR ACCELERATION OF DEBT

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a

period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn- St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_____ Dated _6/24/10_
JASON L SCARBOROUGH

PAY TO THE ORDER OF

**BANK OF AMERICA, N.A.**
WITHOUT RECOURSE
BAC HOME LOANS SERVICING, LP
BY RECONTRUST COMPANY, N.A.
AS ATTORNEY-IN-FACT

BY: _____
HONG DANG
ASSISTANT VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY RECONTRUST COMPANY, N.A.
AS ATTORNEY-IN-FACT

BY: _____
HONG DANG
ASSISTANT VICE PRESIDENT

Copy





**Bank of America** 

**Home Loans**
BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date: February 10, 2010

JASON L SCARBOROUGH
3039 Hellerman St
Philadelphia, PA 19149

Account No:
FHA Case No:

Property Address:
3039 HELLERMAN STREET
PHILADELPHIA, PA 19149

## AMENDED AND RESTATED NOTE
### State of Pennsylvania

Origination Date: September 2, 2008

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred sixty one thousand one hundred eighty and 30/100 (Dollars U.S.) $161,180.30 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of five and 38/100, (5.375%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1, 2010. Any principal and interest remaining on the 1st day of October, 2038 will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. 902.56. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

Copy

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment. of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

**10. GROUNDS FOR ACCELERATION OF DEBT**

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if.

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a

Copy

period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn- St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

Dated __2/16/10__

JASON L SCARBOROUGH

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.

WITHOUT RECOURSE
BAC HOME LOANS SERVICING, LP

BY _Michele Sjolander_
MICHELE SJOLANDER
SVP, OPERATIONS AND LOAN DELIVERY

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

Copy

**The Instrument Prepared By**: Sarah Orlando

**After Recording Return To:**
EQUITY SETTLEMENT SERVICES
444 ROUTE 111
SMITHTOWN, NY 11787

This Document Recorded
10/09/2008
03 30PM
Doc Code M

Doc Id
Receipt #
Rec Fee  126 50
Commissioner of Records, City of Philadelphia

**PARCEL ID #** ▉▉▉▉▉▉

**Property Address:  3039 Hellerman Streetm, Philadelphia, PA 19149**

Mortgage – ▉▉▉▉

Mortgagor:  Jason L. Scarborough and Jennifer Scarborough

Mortgagee:  MERS as nominee for Franklin First Financial, Ltd.



Cop

Prepared By:

Return to:
**FRANKLIN FIRST FINANCIAL, LTD.**
**445 BROADHOLLOW ROAD, SUITE 215**
**MELVILLE, NEW YORK 11747**
Attn.: **Shipping Dept/Document Control**
Parcel Number:

Premises: **3039 HELLERMAN STREET,**
**PHILADELPHIA, PENNSYLVANIA 19149**

——————————— [Space Above This Line For Recording Data] ———————————

Commonwealth of Pennsylvania              **MORTGAGE**

MIN

THIS MORTGAGE ("Security Instrument") is given on **September 2, 2008**. The Mortgagor is **JASON L SCARBOROUGH AND JENNIFER SCARBOROUGH, HUSBAND AND WIFE** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474. The MERS telephone number is (888) 679-MERS. **FRANKLIN FIRST FINANCIAL, LTD., a NEW YORK CORPORATION** ("Lender") is organized and existing under the laws of **the State of NEW YORK**, and has an address of **445 BROADHOLLOW ROAD, MELVILLE, NEW YORK 11747**. Borrower owes Lender the principal sum of **One Hundred Fifty Eight Thousand Two Hundred And 00/100 Dollars (U.S. $158,200.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **October 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **PHILADELPHIA** County, Pennsylvania:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which has the address of 3039 **HELLERMAN STREET** [Street] **PHILADELPHIA** [City], Pennsylvania **19149**
[Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this
Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's
successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right
to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing
or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the
Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the
Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed
the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement
Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they
may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for
unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not
be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA,
Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by

Copy

## SCHEDULE "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Thirty-Fifth Ward of the City of Philadelphia, described according to a Survey thereon erected. SITUATE in the Thirty-Fifth Ward of the City of Philadelphia, described according to a Survey thereof made for Hawthorne Homes, Inc. by Ernest R. Brooks, Surveyor and Regulator of the Eighth District dated July 31, 1950, as follows, to wit:

BEGINNING at a point on the Northeasterly side of Hellerman Street, sixty feet wide, at the distance of three hundred thirty-seven feet, one and one-half inches Southeastwardly from the Southeasterly side of Battersby Street, sixty feet wide:

CONTAINING in front or breadth on the said Hellerman Street, sixteen feet, two and one-half inches and extending of that width in length or depth Northeastwardly between parallel lines at right angles with the said Hellerman Street, partly the center of party walls, one hundred sixteen feet, ten and one-eight inches to the center line of a certain fifteen feet wide driveway which extends Southeastwardly from Battersby Street into Hawthorne Street, seventy feet wide.

TOGETHER with the free and common use, right, liberty and privilege of the said fifteen feet wide driveway as and for a passageway and driveway in common with the owners and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

Together with all and singular the said improvements, ways, street, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of her the said grantor, as well at law as in equity, of, in and to the same.

Parcel ID#: ███████

TITLE VESTED    (GRANTEE):    JASON L. SCARBOROUGH AND JENNIFER
                             SCARBOROUGH, HUSBAND AND WIFE

           ADDRESS:    3039 HELLERMAN STREET
                       PHILADELPHIA, PA 19149

PREVIOUS OWNER (GRANTOR):    JASON L. SCARBOROUGH

DATED:        11/10/2005              RECORDED: 12/09/2005
INSTRUMENT: ███████          CONSIDERATION: $1.00

Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and
require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If
Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance
remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has
not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower.
Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be
credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as
follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by
the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other
hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire,
for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that
Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or
subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried
with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall
include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss
if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make
payment for such loss directly to Lender, instead of to Borrower and to Lender jointly.  All or any part of the
insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the
Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to
prepayment of principal, or (b) to the restoration or repair of the damaged Property.  Any application of the proceeds
to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph
2, or change the amount of such payments.  Any excess insurance proceeds over an amount required to pay all
outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled
thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that
extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass
to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan
Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence
within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the
Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the
date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless
extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any
extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the
Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if
the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and
preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan
application process, gave materially false or inaccurate information or statements to Lender (or failed to provide
Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited
to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security
Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title
to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

---

FHA Mortgage with MERS - PA

4N(PA) (0806)                                     Page 3 of 9                          Revised 4/96 Amended 6/02

Initials: JS
          JS

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

---

FHA Mortgage with MERS - PA

4N(PA) (0806)                                   Page 6 of 9                          Revised 4/96 Amended 6/02

Initials: JS

JS

Cop

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ]  Condominium Rider                    [ ]  Growing Equity Rider          [ ]  Other(s) [specify]
[ ]  Planned Unit Development Rider        [ ]  Graduated Payment Rider

Cop

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  _____ (Seal)
                           JASON  L SCARBOROUGH        -Borrower

_____  _____ (Seal)
                           JENNIFER SCARBOROUGH        -Borrower

                           _____ (Seal)
                                                       -Borrower

                           _____ (Seal)
                                                       -Borrower

FHA Mortgage with MERS - PA                                    Revised 4/96 Amended 6/02
4N(PA) (0806)                        Page 8 of 9

Cop

COMMONWEALTH OF PENNSYLVANIA, *Philadelphia* County ss:
On this __2__ day of *September, 2008*, before me, the undersigned officer, personally appeared **JASON L SCARBOROUGH and JENNIFER SCARBOROUGH,** known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that HE executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: __4/7/20"__

Commonwealth of Pennsylvania
NOTARIAL SEAL
SUSAN F. O'CONNELL, NOTARY PUBLIC
City of Philadelphia, Philadelphia County
My Commission Expires April 7, 2011

_____
Title of Officer

**Certificate of Residence**
I, __Sarah Orlando__, do hereby certify that the correct address of the within-named Mortgagee is 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474 or P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this __7th__ day of __October    2008__.

_____
Agent of Mortgagee
Sarah Orlando

FHA Mortgage with MERS - PA
4N(PA) (0806)                Page 9 of 9

Revised 4/96 Amended 6/02
Initials: _JS_
          JS

**Copy**

eRecorded in Philadelphia PA   Doc Id: 52780909
05/13/2014 11:59AM           Receipt: 1363434
Page 1 of 9                    Rec Fee: $109.50
Commissioner of Records        Doc Code: DM
State RTT:     Local RTT:

WHEN RECORDED MAIL TO:
Bank of America, N.A.
11802 Ridge Parkway, Suite 100
Broomfield, CO 80021

*Proofed By: Brian Basanti*

ORG MTG $ 158,200.00
NEW MTG $ 145,012.11
NEW MONEY $ 0.00

**Recording Requested By:**

Bank of America, N.A.
*11802 Ridge Parkway Suite 100 Broomfield co 80021*

_____ Space Above for Recorder's Use _____

# LOAN MODIFICATION AGREEMENT
## (FHA Insured) (FHA-HAMP with Partial Claim)

**Borrower ("I"):** Jason L Scarborough

**Lender or Servicer ("Lender"):** Bank of America, N.A.

**Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):** September 2, 2008

**Property Address ("Property"):** 3039 Hellerman Street, Philadelphia, PA 19149

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)     One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)                                      Page 1

Copy

527809●●  Page 2 of 9
05/13/1●●4 11:59AM

See attached Exhibit "A" for Legal Description

**Recording Information:** Mortgage dated _____, in principal sum of _____, and recorded in _____ (County and State or Other Jurisdiction) on_____, in Liber/Book _____, Page(s)_____, Instrument Number _____.

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage and partial claim to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are still true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." If there is more than one borrower or mortgagor executing this document, each is referred to as "I," "my" includes "our," and the singular includes the plural and vice versa. Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

1. **My Representations.** I certify, represent to Lender, and agree:

    A. I am experiencing a financial hardship caused by a verifiable loss of income or increase in living expenses. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

    B. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

    C. I am not a borrower on any other FHA-insured mortgage.

    D. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

Copy



527809    Page 3 of 9
05/13/2014 11:59AM

E. Under penalty of perjury, I provided Lender with full and complete information that, when provided, accurately stated my income, expenses, and assets. To the extent requested by Lender, I provided documents that supported that information. However, I was not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program") or for another loss mitigation option.

F. I have made the trial period plan payments required under the Program.

G. I currently have sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand, acknowledge, and agree:

A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

B. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

C. Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

D. The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

3. **The Modification.** I understand, acknowledge, and agree:

A. If all of my representations in Section 1 above continue to be true and correct and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on November 1, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

B. The new Maturity Date will be: October 1, 2043

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)    Page 3

Copy

52780900    Page 4 of 9
05/13/2014 11:59AM

**C.** The new principal balance of my Note will be $145,012.11 (the "New Principal Balance").

**D.** I promise to pay the New Principal Balance, plus interest, to the order of Lender.

**E.** The annual interest rate on the New Principal Balance will be 4.000%, beginning November 1, 2013, both before and after any new default. This fixed interest rate will remain in effect until principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

**F.** On November 1, 2013 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,076.40 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $692.31, plus the current required escrow payment of $384.09. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

**G.** I will be in default if I do not comply with the terms of the Modified Loan Documents.

**4. Additional Agreements.** I understand and agree:

**A.** I accept the risks of entering into this Agreement. These risks include (but are not limited to):

(1) The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

(2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

**B.** I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)                                      Page 4

Copy

527809   Page 5 of 9
05/13/2014 11:59AM

C. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

D. This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

F. The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

G. I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

H. I know that I am only entitled to loss mitigation terms that comply with the Program. Therefore, if Lender discovers any error in the terms of this Agreement or in the FHA's required subordinate mortgage loan, I authorize the Lender to advise me of the error. If I do not accept the corrected terms, at Lender's option, this Agreement becomes void and of no legal effect. If I accept the corrected terms, I will execute and promptly return to Lender the revised and additional documents that will (1) consummate the intended terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I do not sign and deliver a Corrected Agreement or any additional document required by Lender to comply with the Program, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I may not be eligible for the Program.

**Loan Modification Agreement** (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)                                          Page 5

Copy



52780900  Page 6 of 9
05/13/2014 11:59AM

I.   Lender will collect and record, as applicable, personal information about me,
including, but not limited to, my name, address, telephone number, social
security number, credit score, income, payment history, government monitoring
information, and information about account balances and activity ("Personal
Information").   In addition, I consent to the disclosure of my Personal
Information and the terms of the trial period plan and this Agreement by
Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures,
guarantees, or services my first lien or subordinate lien (if applicable)
mortgage loan(s), (2) companies that perform support services for the
Program, and (3) any HUD-certified housing counseling agency.

J.   If any document related to the Loan Documents and/or this Agreement is lost,
misplaced, or otherwise missing, I will comply with Lender's request to
execute, acknowledge, initial, and deliver to Lender any documents Lender
deems necessary ("Replacement Documents").  I will deliver the Replacement
Documents to Lender within ten days after I receive Lender's written request
for such Replacement Documents.

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)                                                                Page 6

Copy

527809    Page 7 of 9
05/13/2014 11:59AM

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_Jason L Scarborough_
(Must Be Signed Exactly As Printed)

_4/22/14_
Date

_____[Space below this line for Acknowledgement]_____

STATE OF _Pennsylvania_
COUNTY OF _Philadelphia_

On the _22_ day of _April_ in the year _2014_ before me, _Stephen Roat_
Notary Public, personally appeared _Jason L Scarborough_, personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/they
signature(s) on the instrument, the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

_Stephen Roat_ Notary Public Printed Name Please Seal Here
_12 9-1 6_ Notary Public Commission Expiration Date

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Stephen R. Roat, Notary Public
Lower Merion Twp, Montgomery County
My commission expires December 09, 2016

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 02/07/13)    Page 7

Copy

52780909 . .Page 8 of 9
05/13/2014 11:59AM



**DO NOT WRITE BELOW THIS LINE.**

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____       Dated: MAY 0 7 2014
_____

Name:  LAURA DUNNELL
Title: ASSISTANT SECRETARY

P.O.A-07-24-2013   DOC-ID 52671705
                    [Space below this line for Acknowledgement]_____

STATE OF ___COLORADO___
COUNTY OF ___BROOMFIELD___
On 5-7-14 _____ before Me SHERRY LYNN BROWN Notary Public, personally appeared
        LAURA DUNNELL_____ Assistant Secretary of Urban Settlement
Services, LLC., attorney in fact for Bank of America, N.A., personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

_____ Notary Signature

SHERRY LYNN BROWN _____ Notary Public Printed Name Please Seal Here

___DEC. 27, 2015_____ Notary Public Commission Expiration Date

SHERRY LYNN BROWN
NOTARY PUBLIC
STATE OF COLORADO
My Comm. Expires December 27 2015

Copy

5278098    Page 9 of 9
05/13/2024 11:59AM

EXHIBIT A

LEGAL DESCRIPTION

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON
ERECTED, SITUATE IN THE THIRTY-FIFTH WARD OF THE CITY OF PHILADELPHIA, DESCRIBED ACCORDING TO
A SURVEY THEREON ERECTED. SITUATE IN THIRTY-FIFTH WARD OF THE CITY OF PHILADELPHIA, DESCRIBED
ACCORDING TO A SURVEY THEREOF MADE FOR HAWTHORNE HOMES, INC. BY ERNEST R. BROOKS,
SURVEYOR AND REGULATOR OF THE EIGHTH DISTRICT DATED JULY 31, 1950, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT ON THE NORTHEASTERLY SIDE OF HELLERMAN STREET, SIXTY FEET WIDE, AT THE
DISTANCE OF THREE HUNDRED THIRTY-SEVEN FEET, ONE AND ONE-HALF INCHES SOUTHEASTWARDLY
FROM THE SOUTHEASTERLY SIDE OF BATTERSBY STREET, SIXTY FEET WIDE.

CONTAINING IN FRONT OR BREADTH ON THE SAID HELLERMAN STREET, SIXTEEN FEET, TWO AND ONE-HALF
INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHEASTWARDLY BETWEEN PARALLEL
LINES AT RIGHT ANGLES WITH THE SAID HELLERMAN STREET, PARTLY THROUGH THE CENTER OF PARTY
WALLS, ONE HUNDRED SIXTEEN FEET, TEN AND ONE-EIGHT INCHES TO THE CENTER LINE OF A CERTAIN
FIFTEEN FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHEASTWARDLY FROM BATTERSBY STREET INTO
HAWTHORNE STREET, SEVENTY FEED WIDE.

PARCEL ID: 551050000.

Page 1 of 2                                     Rec Fee: $168.00
Commissioner of Records                         Doc Code: A
State RTT:    Local RTT:

Recording Requested By:
**Bank of America**
**Prepared By:**
**Rene Rosales**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**
When recorded mail to:
CoreLogic
450 E. Boundary St.
**Attn: Release Dept.**
~~Chapin, SC 29036~~

Property Address:
**3039 Hellerman St**
**Philadelphia, PA 19149-3130**
Property Location:
**35 Ward CITY OF PHILADELPHIA**

PA0v5-AM          10/4/2011                     This space for Recorder's use

MIN #:                    9    MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON DC 20410** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        **FRANKLIN FIRST FINANCIAL, LTD., A NEW YORK CORPORATION**

Mortgagor(s):          **JASON L SCARBOROUGH AND JENNIFER SCARBOROUGH, HUSBAND AND WIFE**

Date of Mortgage:  **9/2/2008**    Original Loan Amount:  **$158,200.00**

Recorded in **Philadelphia County, PA** on: **10/9/2008**, book **N/A**, page **N/A** and instrument number **51978001**

This Mortgage has not been assigned unless otherwise stated below:

Property Legal Description:
**ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE IN THE THIRTY-FIFTH WARD OF THE CITY OF PHILADELPHIA, DESCRIBED ACCORDING TO A SURVEY THEREON ERECTED. SITUATE IN THE THIRTY-FIFTH WARD OF THE CITY OF PHILADELPHIA, DESCRIBED ACCORDING TO A SURVEY THEREOF MADE FOR HAWTHORNE HOMES, INC. BY ERNEST R. BROOKS, SURVEYOE AND REGULATOR OF THE EIGHTH DISTRICT DATED JULY 31, 1950, AS FOLLOWS, TO WIT:  BEGINNING AT A POINT ON THE NORTHEASTERLY SIDE OF HELLERMAN STREET, SIXTY FEET WIDE, AT THE DISTANCE OF THREE HUNDRED THIRTY-SEVEN FEET, ONE AND ONE-HALF INCHES SOUTHEASTWARDLY FROM THE SOUTHEASTERLY SIDE OF BATTERABY STREET, SIXTY FEET WIDE;  CONTAINING IN FRONT OR BREADTH ON THE SAID HELLERMAN STREET, SIXTEEN FEET, TWO AND ONE-HALF INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHEASTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES WITH THE SAID HELLERMAN STREET, PARTLY THROUGH THE CENTER OF PARTY WALLS, ONE HUNDRED SIXTEEN FEET, TEN AND ONE-EIGHT INCHES TO THE CENTER LINE OF A CERTAIN FIFTEEN FEET WIDE DRIVEWAY WHICH EXTENDS**

SOUTHEASTWARDLY FROM BATTERABY STREET INTO HAWTHORNE STREET, SEVENTY FEET WIDE. TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE SAID FIFTEEN FEET WIDE DRIVEWAY AS AND FOR A PASSAGEWAY AND DRIVEWAY IN COMMON WITH THE OWNERS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE USE THEREOF. TOGETHER WITH ALL AND SINGULAR THE SAID IMPROVEMENTS, WAYS, STREET, ALLEYS, DRIVEWAYS, PASSAGES, WATERS, WATER-COURSES, RIGHTS, LIBERTIES, PRIVILEGES, HEREDITAMEMTS AND APPURTENANCES, WHATSOEVER UNTO THE HEREBY GRANTED PREMISES BELONGING, OR IN ANY WISE APPERTAINING, AND THE REVERSIONS AND REMAINDERS, RENTS, ISSUES AND PROFITS THEREOF, AND ALL THE ESTATE, RIGHT, TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND WHATSOEVER OF HER THE SAID GRANTOR, AS WELL AT LAW AS IN EQUITY, OF, IN AND TO THE SAME. PARCEL ID#: 551050000 TITLE VESTED (GRANTEE): JASON L. SCARBOROUGH AND JENNIFER SCARBOROUGH, HUSBAND AND WIFE ADDRESS: 3039 HELLERMAN STREET PHILADELPHIA, PA 19149 PREVIOUS OWNER (GRANTOR): JASON L. SCARBOROUGH DATED: 11/10/2005 RECORDED: 12/09/2005 INSTRUMENT: 5133645 CONSIDERATION: $1.00

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
_10/5/2011_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Jeanine Abramoff_
Jeanine Abramoff Assistant Secretary

State of **California**
County of **Ventura**

On _Oct 05, 2011_ before me, _Evette Ohanian_ , Notary Public, personally appeared _Jeanine Abramoff_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_Evette Ohanian_

Notary Public: _____ (Seal)
My Commission Expires: _____

EVETTE OHANIAN
COMM. #1787925
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 27, 2011

I hereby certify that the address of the within named assignee is:
451 7TH ST.SW #B-133, WASHINGTON DC 20410

_Jeanine Abramoff_
**Signature**

DocID#

When Recorded Return To:
DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

### CORPORATE ASSIGNMENT OF MORTGAGE

**Philadelphia, Pennsylvania**
**SELLER'S SERVICING #**            'SCARBOROUGH"

Date of Assignment: August 25th, 2016

Assignor: BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, BY NATIONSTAR
MORTGAGE LLC ITS ATTORNEY-IN-FACT
Assignee: NATIONSTAR MORTGAGE LLC

I hereby certify the precise address of the within named Assignor is 8950 CYPRESS WATERS BLVD,
COPPELL, TX  75019.

I hereby certify the precise address of the within named Assignee is 8950 CYPRESS WATERS BLVD.,
COPPELL, TX  75019.

Executed By: JASON L. SCARBOROUGH AND JENNIFER SCARBOROUGH, HUSBAND AND WIFE
To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FRANKLIN
FIRST FINANCIAL, LTD., A NEW YORK CORPORATION
Date of Mortgage:  09/02/2008  Recorded:  10/09/2008  as Instrument/Document: 51978001  In the
County of Philadelphia, State of Pennsylvania.
Property Address: 3039 HELLERMAN STREET, PHILADELPHIA, PA  19149 in the City of Philadelphia
Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of NATIONSTAR MORTGAGE LLC is 8950 CYPRESS WATERS
BLVD., COPPELL, TX  75019
Attested By: _____
                              Mohamed Hameed

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $158,200.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under
the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

subject to the terms contained in said Mortgage.
BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP, BY NATIONSTAR MORTGAGE LLC ITS
ATTORNEY-IN-FACT
On August 25th, 2016

By: _____
MOHAMED HAMEED, Assistant
Secretary

STATE OF Texas
COUNTY OF Dallas

On August 25th, 2016, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of
Texas, personally appeared MOHAMED HAMEED, Assistant Secretary of BANK OF AMERICA, N.A.,
SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME
LOANS SERVICING LP, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT, personally
known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

**LEGAL DESCRIPTION**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Thirty-Fifth Ward of the City of Philadelphia, described according to a Survey thereon erected, SITUATE in the Thirty-Fifth Ward of the City of Philadelphia, described according to a Survey thereof made for Hawthorne Homes, Inc. by Ernest R. Brooks, Surveyor and Regulator of the Eighth District dated July 31, 1950, as follows, to wit:

BEGINNING at a point on the Northeasterly side of Hellerman Street, sixty feet wide, at the distance of three hundred thirty-seven feet, one and one-half inches Southeastwardly from the Southeasterly side of Battersby Street, sixty feet wide:

CONTAINING in front or breadth on the said Hellerman Street, sixteen feet, two and one-half inches and extending of that width in length or depth Northeastwardly between parallel lines at right angles with the said Hellerman Street, partly through the center of party walls, one hundred sixteen feet, ten and one-eight inches to the center line of a certain fifteen feet wide driveway which extends Southeastwardly from Battersby Street into Hawthorne Street, seventy feet wide.

TOGETHER with the free and common use, right, liberty and privilege of the said fifteen feet wide driveway as and for a passageway and driveway in common with the owners and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

Together with all and singular the said improvements, ways, street, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of her, the said grantor, as well at law as in equity, of, in and to the same.

Parcel ID#: ▬▬▬▬▬

## Motion For Relief Information
## Post-Petition Ledger

| Filed By: | Jennifer Scarborough | Payment Changes | | | |
|---|---|---|---|---|---|
| | N/A | | | | |
| Case Number: | 20-14465 | From Date | To Date | Total Amount | P&I Total |
| Filing Date: | 11/17/20 | | | #REF! | |
| | | | | #REF! | |
| Payments in POC: | $18,197.33 | | | #REF! | |
| First Post Due Date: | 12/01/20 | | | #REF! | |
| | | | | #REF! | |
| | | | | #REF! | |
| | | | | #REF! | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Payment Applied (P&I and Escrow) | Additional Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | LSAM BR Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| | | | | $0.00 | | | | | $0.00 | $0.00 |
| 11/18/20 | $987.59 | 12/01/20 | $942.62 | $44.97 | | | | | $987.59 | $987.59 |
| 01/22/21 | | | | $44.97 | | $987.59 | | | ($987.59) | $0.00 |
| 02/24/21 | $942.62 | 01/01/21 | $942.62 | $44.97 | | | | | $942.62 | $942.62 |
| 02/24/21 | $1,885.24 | 02/01/21 | $942.62 | $987.59 | | | | | $1,885.24 | $2,827.86 |
| 02/25/21 | | 03/01/21 | $942.62 | $44.97 | | $987.59 | | | ($987.59) | $1,840.27 |
| 02/25/21 | | | | $44.97 | | $987.59 | | | ($987.59) | $852.68 |
| 03/11/21 | $942.62 | 04/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,795.30 |
| 03/12/21 | | | | $44.97 | | $987.59 | | | ($987.59) | $807.71 |
| 04/05/21 | $942.62 | 05/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,750.33 |
| 04/06/21 | | | | $44.97 | | $987.59 | | | ($987.59) | $762.74 |
| 05/03/21 | $942.62 | 06/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,705.36 |
| 05/04/21 | | | | $44.97 | | $987.59 | | | ($987.59) | $717.77 |
| 06/17/21 | $942.62 | 07/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,660.39 |
| 06/18/21 | | | | $44.97 | | $1,004.24 | | | ($1,004.24) | $656.15 |
| 07/27/21 | $942.62 | 08/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,598.77 |
| 07/28/21 | | | | $44.97 | | $949.42 | | | ($949.42) | $649.35 |
| 08/04/21 | $942.62 | 09/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,591.97 |
| 08/05/21 | | | | $44.97 | | $949.42 | | | ($949.42) | $642.55 |
| 09/13/21 | $942.62 | 10/01/21 | $942.62 | $44.97 | | | | | $942.62 | $1,585.17 |
| 09/14/21 | | | | $44.97 | | $949.42 | | | ($949.42) | $635.75 |
| 12/17/21 | $1,885.24 | 11/01/21 | $942.62 | $987.59 | | | | | $1,885.24 | $2,520.99 |
| 12/20/21 | | 12/01/21 | $943.81 | $43.78 | | $949.42 | | | ($949.42) | $1,571.57 |
| 12/20/21 | | | | $43.78 | | $949.42 | | | ($949.42) | $622.15 |
| 12/31/21 | $942.62 | 01/01/22 | $943.81 | $42.59 | | | | | $942.62 | $1,564.77 |
| 01/04/22 | | | | $42.59 | | $949.42 | | | ($949.42) | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |
| | | | | $42.59 | | | | | $0.00 | $615.35 |